UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-CV-00051-H

JO ANDERSON                                                                           PLAINTIFF

V.

STANDARD INSURANCE CO.                                                   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jo Anderson sued Defendant Standard Insurance Company ("Standard") after Standard denied her disability insurance claim. Her Amended Complaint contains five counts: (A) Breach of Contract; (B) Breach of Duty of Good Faith and Fair Dealing; (C) Unfair Claims Settlement Practices; (D) Consumer Protection Act; and (E) Failure to Timely Pay Claim. Standard has moved to dismiss Count (C) and to strike four portions of the Amended Complaint. After a very brief factual background, the Court will consider the motions in turn.

I.

Few facts are required to resolve these motions. Jo Anderson is a former art teacher for Jefferson County Public Schools. While she was teaching, Anderson obtained disability insurance coverage under a policy that Standard issued to her employer (the "Policy"). Anderson claimed that she became disabled while she was covered under the Policy and thus submitted a claim. Standard conducted an investigation and ultimately denied coverage. As part of its investigation, Standard employed expert medical professionals who, according to Anderson, were not licensed to practice medicine in Kentucky. This lawsuit challenges both Standard's investigation and its ultimate decision to deny coverage.

II.

In order to survive dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S at 678 (quoting *Twombly*, 550 U.S. at 555, 557)).

III.

The Court first considers Standard's motion to dismiss Count C of Anderson's Amended Complaint. The claim at issue arises under the Kentucky Unfair Claims Settlement Practices Act (the "UCSPA"). This statute provides that "[i]t is an unfair claims settlement practice for any person to commit or perform" any of 17 enumerated "acts or omissions." Ky. Rev. Stat. § 304.12-230 (West 2013). To state a claim under the UCSPA, the plaintiff "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of

punitive damages." *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (quoting *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).  After this initial showing, the plaintiff must establish:

> (1) the insurer must be obligated to pay the claim under the terms of the policy;
> (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and
> (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890 (quotations omitted).

A.

As the following analysis demonstrates, Anderson has not stated any remotely specific facts to support her claim.  Count C of the complaint begins: "Pursuant to KRS 304.12-230 ("UCSPA"), it is an unfair claims settlement practice for Defendant to commit or perform any or all of the following acts or omissions . . . ."  Anderson then proceeds to list, verbatim, nine of the 17 enumerated "acts or omissions" that constitute unfair claims settlement practices under the UCSPA.  In the next paragraph, Anderson concludes: "As demonstrated by her supporting medical evidence, Ms. Anderson was and remains entitled to receive the policy benefits.  Yet with full knowledge of its actions . . . as well as with reckless indifference to her, Standard violated each of the above recited requirements and its violations are ongoing.  As with her claim that Standard breached its duty of good faith and fair dealing, similar facts support Ms. Andersons' claim."  The final paragraph concludes: "As a direct result of each of Standard's violations of the UCSPA, both willful and without [sic] reckless disregard, Ms. Anderson has been and continues to be damaged."

These legal conclusions couched as facts are not sufficient to create a plausible claim.  In its response to Standard's motion to dismiss, Anderson emphasized that this cause of action incorporates the facts set forth in its claim for breach of duty of good faith and fair dealing.  But

3

Anderson only generally points this Court to seven paragraphs of the Complaint, many of which are also simply legal conclusions based on the elements of recovery in a breach of contract and breach of good faith and fair dealing claim. In fact, after a careful review of the Complaint, the Court could not find any facts anywhere in the pleading to support eight of the nine alleged violations of the UCSPA.[1] Standard is entitled to notice of the factual allegations that form the basis for the claim against it. *Twombly*, 550 U.S. at 555. Anderson's unsupported "all-of-the-above" approach to pleading its bad faith claim falls short.

The only UCSPA violation listed in Count C of the Amended Complaint that is conceivably supported by some part of the pleading is Part (d), which alleges that Standard "refus[ed] to pay claims without conducting a reasonable investigation based upon all available information." Again, in her response to Standard's motion to dismiss, Anderson does not cite to a single fact to support this allegation and leaves the Court to determine which, if any, of the many allegations described in the pleading support her claim.

B.

It does appear that Anderson has taken issue with Standard's decision to use its own experts—who are not licensed to practice medicine in Kentucky—to evaluate and deny her disability claim. By using its own experts to evaluate the claim, Anderson alleges that Standard "willfully and intentionally violated Kentucky's medical licensing laws" through its "agents."

---

[1] The unsupported allegations include: (a) misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue; (b) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; (c) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (e) failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed; (f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; (g) compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; (h) delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information; and (i) failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

4

The facts here are undisputed: Standard does use such persons to evaluate claims. So, Anderson's claim amounts to a purely legal challenge.

The Kentucky Medical Practice Act provides, in pertinent part, that "no person shall engage or attempt to engage in the practice of medicine or osteopathy within this state . . . unless the person holds a valid and effective license or permit issued by the board as hereinafter provided." Ky. Rev. Stat. § 311.560(1) (West 2013). The "declared policy" of the General Assembly in passing this legislation was "to prevent empiricism and to protect the health and safety of the public." *Id.* § 311.555.

The Court finds that neither an insurance company nor its agents are engaged in the practice of medicine in violation of KRS § 311.560(1) when they investigate a disability claim. In *Hackney v. Lincoln Nat'l Life Ins. Co.*, No. 3:12-CV-00170-CRS, 2014 WL 2440691 at *13-14 (W.D. Ky. May 30, 2014) (slip copy), the court held that an insurance company did not violate KRS § 311.560, even though it "consulted non-licensed medical professionals in arriving at its decision to deny [the plaintiff's] claim for disability benefits . . . ." In reaching this conclusion, the court emphasized that the opinions of the insurer's medical professionals would have no bearing on the ultimate medical decisions or treatment plans of the insured. *Id.* at *14. Rather, the purpose of the insurer's investigation was limited: "the unlicensed medical personnel who reviewed [the plaintiff's] medical records determined only that his condition did not prevent him from performing the necessary functions of his occupation." *Id.*

C.

Likewise, Anderson cannot rely solely on Standard's use of its own unlicensed medical professionals to establish a bad faith claim. Standard's review did not violate the Kentucky Medical Practice Act because its experts were not practicing medicine. There is no allegation

that Standard's experts could have affected Anderson's medical treatment.  Besides, if this Court were to accept Anderson's theory and hold otherwise, then almost every disability insurance coverage investigation would violate the Medical Practice Act because such investigations necessarily require the insurer to evaluate the insured's medical condition.  It would be absurd to conclude the General Assembly intended such a result when it enacted the Medical Practice Act.

It is certainly not bad faith for an insurance company to employ and rely on expert opinions to conduct a full investigation.  In fact, experts were likely *required* in this case; the UCSPA provides that it is bad faith for an insurance company to fail to "conduct[] a reasonable investigation based upon all available information."  Ky. Rev. Stat. § 304.12-230(4) (West 2013).  Standard's reliance on the opinions of its own medical experts—even if those opinions differed from Anderson's—does not overcome the requisite "high threshold standard that requires evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages."  *Phelps*, 736 F.3d at 703 (quotations omitted).  This basis for Anderson's bad faith claim fails as a matter of law.  As Anderson has failed to allege sufficient facts to identify another plausible bad faith theory, this claim is dismissed without prejudice.

IV.

Standard also moved to strike four parts of the Amended Complaint.  Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The Sixth Circuit has held that "the action of striking a pleading should be sparingly used by the courts."  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).  Moreover, courts should strike pleadings "only when required for the purpose of justice" and when "the pleading to be

6

stricken has no possible relation to the controversy." *Id.* A district court has broad discretion in analyzing a Rule 12(f) motion. *United States ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp.*, No. 5:08-145-KKC, 2013 WL 1187000 at *1 (E.D. Ky. Mar. 20, 2013).

The first two sections at issue are Anderson's brief introduction and her first numbered paragraph. These sections merely provide some instructions concerning the pleading and list the causes of action Anderson asserted in her original Complaint. While certainly not critical to Anderson's case, the Court finds these two paragraphs are not "redundant, immaterial, impertinent, or scandalous matter" and denies the motion to strike. The next two sections refer to Anderson's theory that Standard "willfully and intentionally violated Kentucky medical licensing law." The Court rejected this theory in Part III of this opinion and finds it unnecessary to strike the statements from Anderson's complaint.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Standard's motion to dismiss Count C of Anderson's Amended Complaint is GRANTED and Count C is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Standard's motion to strike is DENIED.

cc: Counsel of Record